The next case will be 06-5069, Polonik, for the United States. Good morning. Yes, please. May I get some water, please? Mm-hmm. Thank you. May it please the Court. Your Honor, sir, my name is Don Badgley. I represent Mr. Polonik. First of all, I should note that the Ninth Circuit has recently decided in the last couple of days two cases, Miller and Tuff, involving essentially the identical issues in this case. Both of them are contrary to our position in this case. I will address that in my argument. This is a case of statutory construction. And because it is, it is the obligation of the Court to first determine what is the purpose of this statute. Why are we here? What was intended by the drafters of this legislation? Well, you make a great deal out of the purpose which you find in there, which is to avoid converting ordinary income into capital gains. And the government says that's not the purpose of the statute. There's no evidence that that's the purpose of the statute. What support is there for your concept of the purpose of the statute as being designed to avoid capital gains treatment? Thank you, Your Honor. I might say that the Ninth Circuit also held that that wasn't the purpose, but it held that the purpose was to provide another way in which an employer could grant an option, which we think is totally imperative. The purpose must be derived, since it isn't stated, from the function of these provisions. The function of these provisions isn't in doubt. The function of the provisions is to move the transfer date from the date of execution of the option on nonrecourse debt to the date in which the stock is sold. And that purpose, the effect of that purpose is to give to the government ordinary income tax on the entire gain as opposed to ordinary income tax on the first execution and then capital gains on the sale of the stock. So the purpose is self-evident, and there's no other purpose that's evident from reading those provisions. So I think the conclusion must be that the purpose is to protect the concept of capital gains, to apply it only to persons who have put their funds at risk. A careful scrutiny and analysis of these provisions can lead to no other conclusion. Suppose we were to say, well, that's an interesting and imaginative concept of what the statute is about. But we simply don't know whether that's true or not, so we can't agree with your argument about the purpose of the statute. Where does that leave you? Well, and this question is also, where does it leave the court? We must know what it is we're interpreting here. You can look at the plain language. I guess that's what I'm asking you. Does the plain language help you if you lose on the purpose argument? Absolutely. Let me explain. First of all, I should point out that every reason given of the Ninth Circuit, every reason given by the Palamon Court and any other court that has decided against us on this issue, will totally, completely, and absolutely nullify, negate, and emasculate these provisions. They'll just never operate. They'll have nothing to operate on. Every reason given applies to the circumstances described in Example 2, which tells us how this works. And Example 2 doesn't work. If any of the reasons given for denial of Palamon are applied to Example 2, Example 2 doesn't work. This is an unfortunately awkward piece of writing, these regulations. We all can see that. But the answer, I think, is found in Example 2. In Example 2, it says how this works. That's on Wig 183-182. It states that there's a sale of shares. By the way, whether the exercise is with cash out of an employee's pocket, or by result of a note given to the employer, or as a result of borrowings from a broker, transactions are the same in every case. Payment is made in full. The deal is done. The employee owns the stock. He can sell it, pledge it, vote it, receive dividends. It's his. And that is set forth in Example 2. In Example 2, it tells the court and us, and people, how this works. They say $10,000 in bond recourse, notice given. That's payment, by the way. We all know that. Peppercorn's payment, a notice payment, a cashless payment. The stock has been paid for. Title is transferred. The first, the fourth quote says, this employer, W, sells. That's a sale, it's not an option. The stock is sold, title transfers. And they even go out to point out that the employee collects dividends, holds the stock, pays the interest on the note, but makes no payments on the principal. And so in that case, they go ahead and say, after saying that because he's making no payments, the likelihood of paying the purchase price is in substantial doubt. That's the rule we follow here. And as a result, the employee has not incurred the risk of a beneficial owner that the value of the stock will decline. Well, in a certain sense, we all know that if he doesn't exercise his option, the stock goes down. He has a, sort of from a layman's standpoint, a risk. But as a whole of an option, he has no risk of the decline in value. And the last line here says, no transfer of the stock occurred, even though there's been a sale and all these attributes of ownership have transferred. But an option to purchase the stock has been granted. What are we going to do with that? We know that isn't true. No option has been granted. A sale has been made. So what the break says here is, look, we're going to treat this for the purposes of taxation only, for the purposes of moving this transfer deal out so we can collect ordinary income tax on the entire amount of the gain. It says, it doesn't say it may have been granted. It says an option to purchase the stock has been granted. This is a direct contradiction to the first line that says there's a sale. That's okay. They're entitled to make an exception for our fiction to collect tax. But in your reading of this, who's granting the option? The brokerage house or the company? In the example— No, not in the example, but in this case. In this case, you're right. Who's granting the option? Is it the company or the brokerage house? The grant of the option is the whole transaction. And I'm sorry, I don't mean to be evasive here, but here's the problem. I'm answering that more directly. What really is being said here is that we're going to treat Mr. Palamute as the holder of an option. So if he's a holder, we're going to treat this as an option has been granted by the employer. So that's more direct. Now, Mr. Palamute, can all these people somewhere situated— I'm sorry, did you say that the option in this case is granted by the employer? Yes, Your Honor. Really? Yes, sir. I would have thought the employer was out of the picture once he acquired the stock. There's no longer any indebtedness to the employer. The employer doesn't care where the money came from. Absolutely not. The employer could care less, and there is actually no option granted by anybody. But under the example, you can't read this example and say the option wasn't granted by the employer. Well, but the example, sure. The example is saying if the employer—not the third party, but the employer—supports the option via a loan, then we will regard this as being a continuation of the option, in effect, from the employer. But once the employer has finished a transaction in which it is not involved in a loan, it seems to me you've got a very different case. And then whether the money is borrowed or whether the money was a gift from a rich uncle or whether the money came from under the mattress doesn't really matter, does it? Yes, Your Honor. Okay, well, let me ask you this. Suppose the strike price was, instead of being a fairly substantial amount of money, is $100. You've got an employer who's really generous. The strike price is $100. $100 for $2 million, an amount of stock that we don't know the actual value because that's necessary for this transaction to work this way, but we know that it's a lot. It's in the neighborhood of $2 million, let's say. So can the employee effectively continue the option status, in your view, of that grant by both paying the strike price but making sure that he borrows the $100 in a non-recourse mode? And pledges his stock. Yeah. I don't think he has a choice. That's what the law says. Well, but does that make any sense? I mean, because in effect, it's a totally trivial contribution by the lender to the transaction, but it's one which would dramatically affect the tax consequences. That sounds like the kind of thing that tax policy would strongly argue against.  All right. The second, or first, deals with the second point. The purpose of this provision is to deny to the individual who doesn't put their own funds at risk, either because the employer doesn't require its non-recourse mode, or because someone else puts it up on a non-recourse mode, regaining the benefit of capital gains tax on the subsequent gain. So that works in either situation. Equally important, this example is one example. That is the example of the employer being the one that takes the money. It's just an example. It doesn't give the other examples, but the operative language that precedes this example in no way limits its operation to taking a non-recourse mode by an employer. It doesn't do that. It applies cart launch. And the reason it applies cart launch is that it didn't. Any employee who wanted to get capital gains treatment on a subsequent gain could easily do so by manipulating the system and say, well, look, I won't give you a non-recourse mode. I can get a non-recourse mode over here. They'll pay it. And I'm still free of the standing position of the option holder. I'm free of any risk. I'm going to get all the benefits. That's what this was intended to prevent. I would have thought your answer to Judge Bryson would be that in his hypothetical, the amount that was paid and that was financed was so small in relation to the value of the stock that the beneficial interest, since you have to consider all the circumstances, that the beneficial interest really was in the stockholder and that the favored tax treatment wouldn't be accorded under those circumstances. Your Honor, every single case, or the case in the example, any case, 100% of the cases, the beneficial interest is in the tax holder. Another example in which the... You don't want my help on that. You agree that the favorable tax treatment has to be accorded in Judge Bryson's example. I probably didn't really understand that, Your Honor. I'm sorry. I didn't track with you on that. I apologize. I'd like to point out since my time... Let me add to Judge Bryson's hypothetical one in which there's a weak gap. He gets the stock from the company and then a week later he finances it with the brokerage house. Is that covered by the statute? No. It's determined at the time of the transaction. If he does the deal, gets the stock, and then later he finances it. Too late, sorry. It has to be simultaneous. Oh, yes. Okay. Now, because the issues are many, the language is obtuse. I'm going to give the court two examples that demonstrate the trial court was flat out wrong in its analysis on these two points. You've only saved two minutes for rebuttal. Do you want to save it or do you want to use it now? I'll use it now, Your Honor. Thank you. All right. The court has gone in the language of... and there's virtually the identical language in the tough case. Listen, please. The court says, first, Kalanick had the right to receive dividends, both the stock, and he pledged it as collateral. Wrong. In such circumstances, this factor weighs against finding that the transaction is in substance the same as the grant of an option. Well, excuse me. Those are the exact things that are said in example two in which they end up saying an option to purchase has been granted. So the problem with the analysis in the courts below, and respectfully in the Ninth Circuit, is that they're looking at this as, well, is this an option? Is it or not? Does it have the characteristics? It's a fiction created by law for the legitimate purpose of the law of making sure that there's a proper balancing of when capital gains treatment is accorded. The other example... I think I'll pass on. I'll say 38 seconds before we move on. Mr. Oppenheimer? No, you can say 38 seconds. Mr. Oppenheimer? Okay. I'm recovering from bronchitis. This is one of many cases that are pending before the courts in which employees exercise stock options during the high-tech bubble. The bubble burst shortly after they exercised these options and the transactions. When you take into account the tax consequences were unprofitable, and now the taxpayers seek to make the government share in their unprofitable transaction. Are there any of these cases pending outside of the Ninth Circuit besides this one? Yes, there are. There's one pending in the Fifth Circuit that was argued but not decided. I believe there might even be one that's docketed in the Eighth Circuit or something. When was the Fifth Circuit case argued? The Fifth Circuit case was argued in the end of October or the beginning of November. Could you go back a step in... I don't want to consume too much of your time with this, but I'm not clear about the history of the statute. I guess Section 83 was enacted in 1969. That's correct. It was not enacted as taxpayer contents to give capital gains treatment in the circumstances of this case. It was basically enacted to equalize the treatment of various types of deferred compensation. Contributions to pension plans and profit-sharing plans were immediately taxable, whereas restricted stock option plans were not immediately taxable. Was there any difference in pre-'69 between the treatment of the restricted stock itself and an option, or was it treated the same way? I don't know the answer to that question. If the Court likes, I can furnish a supplement and make a brief on that, but I'm not prepared to answer that question now. As I understand it from the legislative history, in the case of an option, there was no taxation until any restrictions on the option ceased or until a transfer, until the stock was transferred. And so the purpose of the statute was to equalize the treatment of all types of deferred compensation, and what it did was it made the transfer of property in connection with employment taxable on the occurrence of the earlier of the time that the property was transferable or not subject to a substantial risk of forfeiture. So in this case, the earlier of the two was the time that the stock was not forfeitable, but in this case, the stock became freely transferable when the option was exercised. At that time, the taxpayer had the right to sell the stock, as he did in 2001. He had the stock right to pledge the stock, which he did immediately to the broker. He had the right to vote the stock and to receive dividends. So under the regulation, because all incidents of ownership had been transferred to, or the employee had obtained the beneficial incidents of ownership at the time of exercise of the option, he is immediately taxable in the amount equal to the difference between the fair market value of the stock at the time of the exercise and the exercise price. There's absolutely nothing in the legislative history that supports the taxpayer's contention. And, in fact, he doesn't even rely on legislative history. He relies on the plain language of the statute. Well, in fact, the plain language of the statute supports our position that the exercise of the option is immediately taxable when it is exercised. There's nothing in the statute that imposes any such contingency on the taxation of the property. In fact, under the statute and the regulations, if an option is granted and if an option has a readily ascertainable fair market value at the time it is granted, the option is immediately subject to taxation. Now, of course, that would be a situation in which the employee has no capital at risk, but notwithstanding the lack of capital at risk, the option is immediately subject to taxation. So that supports our position that the presence or absence of capital at risk is entirely irrelevant to the tax consequences. As the Court of Federal Claims said, the focus of the statute is on what the employer gave, not on what the employee did or did not receive, and not on what the employee paid or did not pay. And the Ninth Circuit in Tufts reaffirmed the Court of Federal Claims holding in this regard in Tufts when it stated the critical inquiry is what Real Networks, which was the employer in Tufts, transferred and when it received payment, not how Tufts financed his purchases. In addition, there's absolutely nothing in the regulation or an example thereto that supports the taxpayer's position on this subject. The regulation provides that if the amount paid for the transfer of property is an indebtedness secured by the transfer property on which there is no personal liability to pay all or a substantial part of the indebtedness, such transaction may be in substance the same as the grant of an option. So again, the preamble to the reg is if the amount paid for the transfer of property is an indebtedness. Well, in this case, the amount paid for the transfer of the property was cash, not an indebtedness. Palahunk paid cash for the property, and where he acquired the cash is totally irrelevant under the statute and the regulations. It doesn't matter whether he got the cash from his bank account, it doesn't matter whether he got the cash from a rich uncle, and it doesn't matter whether he got the cash from a broker to whom he was liable to repay the money. The example, I take it, in your view, applies only in the case of a loan from the employer. That's correct. So the unfortunate use of the passive voice leaves this a little unclear, but the context makes it clear enough, I suppose, that the example, at least, only refers to loans from the employer. It doesn't necessarily foreclose the possibility the rationale of the example could be applied more broadly, but the example is only in terms of loans from the employer. That's correct. The example is in terms of loans from an employer. The Court of Federal Claims construed this type of situation as an alternate to a situation where there's some kind of stock option agreement that the employer enters into with employees. It's sort of an alternative way of giving an option. It applies only to the situation of an employer, and again, this is a situation of a non-recourse note, which we do not have here. Does it really depend on the source of the loan? I would have thought the statute would apply even in a situation in which the financing is provided by a third party as long as the corporation, for example, continues to hold the stock and hasn't transferred it to the employee, that if the employee chooses to finance it with a third party and makes whatever payment is necessary to the corporation, but the corporation continues to hold the stock and the employee hasn't yet acquired the right to sell it. Wouldn't that be within this provision? You mean within the regulation? Yeah. Well, I mean, the regulation is applicable if the amount paid for the transfer of property is an indebtedness. In this case, the amount paid was not an indebtedness. But the hypothetical is that the stock remains with the corporation. It hasn't been transferred to the employee, but that he's borrowed some money and made a payment to the corporation based on money that he borrowed somewhere else. Does that make a difference whether he's done that? Well, of course, it's a different situation from what we have here. In this case, the stock was transferred. I understand it's a different situation, but I'm just saying this doesn't depend on borrowing money from the corporation, does it? Well, the example is only one situation. But the overall, Section 83, it doesn't make any difference whether the employee has borrowed money from the corporation or not borrowed money from the corporation as long as the stock hasn't been transferred to him, the option hasn't been exercised, the corporation continues to hold it. No? Well, that is correct. Under the regulation, the employee is taxable on the stock when he has obtained the beneficial incidence of ownership. So if he has not obtained the beneficial incidence of ownership, he wouldn't be taxed on the property. But the fact that the corporation holds the stock isn't dispositive. A lot of corporations have book entry situations where the employer... Okay, but I'm talking about where the corporation restricts the stock. He doesn't yet have the right to sell it. The fact that he has borrowed money from a third party and paid it to the corporation instead of borrowing money from the corporation doesn't really have anything to do with it, does it? Well, under the regulation, whether an option is granted depends on all the facts and circumstances of a particular case. So you're saying it could be a factor, but it's not necessary? You mean as far as whether he's borrowed from a third party? Yeah. I mean, the question of his beneficial ownership in the stock that says stock that can't be valued doesn't depend on whether he's borrowed money... That's correct, Your Honor. It's not determinative, but I mean, yes, I guess that is a factor that could be taken into account. It's a factor, but not determinative. That's correct, Your Honor. Well, now I am confused. I thought I had figured this out, but maybe I haven't. But I had the impression that the government's position was that now focusing in only on example 2, that example 2 works only in cases where the loan is coming from the employer. That's correct. Okay, so at least with respect to that example and the facts of that example, if you change that example by changing the loan from the employer to a loan from a third party, then your position is example 2, that the tax consequences laid out in example 2 no longer apply, right? That's correct. But Treasury Regulation 1.83-382 is broader than example 2, and I understood Judge Dyke's question to be getting at the broader... I think his question was, I just wanted to make sure that it stood because your opposing counsel focuses in on example 2, and I had conceived this case as turning on, in effect, the breadth of example 2. Because I think that Mr. Badgley is saying example 2 is not limited to the employer, and you, I think, are saying that to the extent that this case is about example 2 and the breadth of example 2, it does limit itself to the employer, the loan from the employer. Well, example 2 is limited to the employer situation. Right. I would say the regulation as a whole is broader than that, but the regulation, even if you look at the broader regulation, that doesn't really help the taxpayer. So just to be clear about this, what you're saying is that the reason in example 2 that the beneficial ownership hasn't been transferred to the employee is because the employee has borrowed the money from the corporation. In other words, there are no other facts in example 2 that would prevent the transfer of beneficial ownership. Well, there are other facts in example 2. He's borrowed the money under a non-recourse loan in example 2. No, no, but I'm talking about the whole circumstances of the loan. It's the circumstances. It's in example 2, as Judge Bryson was suggesting. It's the circumstances of the loan from the corporation that prevent the transfer of beneficial ownership, and that's why example 2 is dependent upon the loan from the corporation. Right. But example 2 addresses the question, has the employer given an option? Has he actually transferred property? Where the corporation is doing the financing. Right, that's correct. That in and of itself, in some circumstances, can prevent a transfer of beneficial ownership. That's the point of example 2. And also the fact that there was a non-recourse note and that the employee was not making payments on the note. But even under the broader terms of the regulation, what the taxpayer received in this case was not an option. He received property that was subject to Section 83. The regulation says if the amount paid for property is an indebtedness on which there is no personal liability to pay all or part of the indebtedness, the transaction may be the same as an option considering the facts and circumstances. Well, in this case, the amount transferred was not an indebtedness. It was cash. Furthermore, there was a recourse note. The taxpayer was personally liable to pay the brokerage house a deficiency if the collateral he pledged was insufficient. We have that. That's pretty much clear from the briefs. Thank you. Thank you. Thank you, Your Honor. Reference to the last point. Much has been made of the provision that the amount paid for the transfer of property is an indebtedness secured by the transfer of property. In our case, the amount paid is an amount, Mr. Powell, paid through his broker, is an indebtedness. It's an indebtedness payment. And it is secured by the transfer of property. All the tests for the third-party loan secured by the property, non-recourse, are met. It is not required that the loan be from him. Thank you. Thank you. Case is submitted. Thank you.